Hillsborough,
No. 5353.

ATTORNEY GENERAL *ex rel* THE AMOSKEAG NATIONAL BANK & a.

*v.*

MANCHESTER MORRIS PLAN BANK.

Argued June 2, 1965.
Decided October 5, 1965.

*Wiggin, Nourie, Sundeen, Nassikas & Pingree (Mr. John N. Nassikas* orally), for the Amoskeag National Bank.

*Devine, Millimet, McDonough, Stahl & Branch (Mr. Norman H. Stahl* orally), for The Manchester National Bank.

*Sheehan, Phinney, Bass & Green* (*Mr. William S. Green* orally), for The Merchants National Bank.

*William Maynard,* Attorney General, pro se.

*Sullivan, Gregg & Horton* (*Mr. Sherman D. Horton, Jr.* orally), for The Manchester Morris Plan Bank.

WHEELER, J. Information, in the nature of *quo warranto* seeking to prevent the defendant Manchester Morris Plan Bank from converting to a national bank in contravention of RSA ch. 389 and RSA ch. 384-B (supp).

Trial by the Court (*Grimes,* J.) who made certain findings to supplement an agreed statement of facts.

Among others, the main issue transferred to this court without ruling is "whether the term 'a State bank' in RSA 389:1 includes the Manchester Morris Plan Bank, or phrased another way, whether the Manchester Morris Plan Bank is a bank as that term is used in the statute."

"In so far as it is a question of fact [the Trial Court found] that to be classified as a bank as that term is used in the commercial world, an institution must be empowered to accept deposits of one kind or another. Whether the funds which the Manchester Morris Plan Bank accepts under its B and C certificates are deposits is a matter which is left to the Supreme Court."

The defendant Manchester Morris Plan Bank was organized pursuant to a special act of the Legislature. Laws 1921, *c.* 274. It has its principal place of business in Manchester.

In January and February 1964, James E. Chandler and Hugh Gregg, both of Nashua, acquired the majority of the voting capital stock of the defendant. By means of an escrow agreement they have acquired 555 additional shares. Chandler is president, a member of the board of directors, and a stockholder of the Indian Head National Bank of Nashua. He is also president, a member of the board of directors and a stockholder of New Hampshire Bank Shares, Inc. The latter is a bank holding company organized under the laws of New Hampshire which owns the controlling interest in six national banks in this state including the Indian Head National Bank of Nashua.

Hugh Gregg is chairman of the board, a director and a stockholder of the Indian Head National Bank of Nashua and is a

director and a stockholder of New Hampshire Bank Shares, Inc.

On March 25, 1964, the board of directors of Morris Plan Bank voted to apply to the Comptroller of the Currency to convert into a national banking association and forwarded its application to the Comptroller. On July 7, 1964, the latter approved the Manchester Morris Plan Bank's application to convert into a national bank under the title of the Indian Head National Bank of Manchester.

On July 22, 1964, a special meeting of the defendant's stockholders was called for August 14, 1964, at 4:00 P.M. On August 13, 1964, the relators, being national banking associations having their principal places of business in Manchester (other relators were joined subsequently) obtained an order in the United States District Court restraining the Comptroller from issuing his certificate of authority permitting the approved conversion. On the same day an injunction was obtained in the Superior Court preventing the holding of a meeting of defendant's stockholders to implement its conversion to a national bank.

On August 21, 1964, the Comptroller stipulated that he would not issue a certificate of authority for conversion of the defendant until final adjudication of the present action.

The defendant seeks to convert into a national banking association under the provisions of 12 U. S. C., s. 35 which provides:

"Any bank incorporated by special law of any State or of the United States or organized under the general laws of any State or of the United States and having an unimpaired capital sufficient to entitle it to become a national banking association under the provisions of the existing laws may, by the vote of the shareholders owning not less than 51 per centum of the capital stock of such bank or banking association with the approval of the Comptroller of the Currency be converted into a national banking association with any name approved by the Comptroller of the Currency. Provided, however, that said conversion shall not be in contravention of the State law."

The Morris Plan was developed by Arthur J. Morris, an attorney of Norfolk, Virginia. As a result of being legal advisor to several banks he came face to face with the small-loan problem and the inability of the workingman or small-salaried man to obtain such loans from existing financial institutions. After a detailed study of the banking laws of various states and foreign

countries he evolved the basic principles of the Morris Plan.

With the foundation laid by obtaining sufficient capital Morris applied for a charter. Accordingly the first banking company to operate under what later came to be known as the "Morris Plan" opened its doors in Norfolk, Virginia, March 23, 1910. See Herzog, The Morris Plan of Industrial Banking, *pp.* 12, 18 (1928).

The defendant Morris Plan Bank was incorporated in 1921 by a special act of the Legislature, Laws 1921, *c.* 274, the material portions of which are as follows: "1. . . . are hereby made a body politic and corporate under the name of Manchester Morris Plan Bank to be located in Manchester.

"2. The Objects for which this corporation is established are to carry on and transact a general loan business in aid of persons of limited means; to loan money at interest not to exceed the legal rate upon property and securities real and personal; to issue interest-bearing certificates payable in installments or otherwise; to carry on business in accordance with the Morris Plan. Said corporation shall not accept savings or business deposits."

The Court made certain findings concerning the defendant's method of operation which were warranted by the evidence and are as follows:

"It is found that the Manchester Morris Plan Bank's investments, except for surplus funds, have been in loans under Five Thousand Dollars, using automobiles, savings accounts, securities, appliances and so forth as security. It has made business loans for the acquisition of inventories and F. H. A. Title 1 Loans. Its surplus funds have been invested in bonds or savings accounts. Such real estate mortgages as it has taken have been either second mortgages or mortgages taken as security for antecedent debts. The money it loans comes from funds obtained under its Class B and C Certificates and from surplus and borrowed funds. It has never accepted deposits subject to check. It has limited vault facilities. It accepts money from the public only under its Certificates B and C, but it has never required the 30-day notice for withdrawals. It does not permit a partial withdrawal of funds under its paid up certificates but it has permitted withdrawals in any amount up to the total amount held under the Installment Certificates, which it sometimes makes unlimited in amount by striking out the dollar amount on the face

of the card. In August, 1964, however, this practice of permitting partial withdrawals has been ordered terminated by the Bank Commissioner as being contrary to the By-Laws . . . It is made subject to the supervision of and is examined by the Bank Commissioner and makes reports to him on the same forms as other banks. The Commissioner (not the incumbent) has expressed the opinion that its investments of surplus funds should be confined to those made legal for investments by savings banks . . . It pays a rate of interest on its certificates which is competitive with banks in the Manchester area."

For a more detailed outline of a method of operation comparable to that of the defendant see *C.I.R.* v. *Valley Morris Plan,* 305 F. 2d 610 (9th Cir. 1962).

RSA 389:1 under which the defendant seeks to convert into a national bank reads as follows:

"STATE BANK MAY BECOME NATIONAL BANK BY MERGER OR CONVERSION. Nothing in the law of this state shall restrict the right of a state bank to merge with, consolidate with or convert into a resulting national bank. The action to be taken by such merging, consolidating or converting state bank and its rights and liabilities and those of its stockholders shall be the same as those prescribed for national banks at the time of the action by the law of the United States and not by the law of this state, except that a vote of the holders of two-thirds of each class of voting stock of a state bank shall be required for the merger, consolidation or conversion, and that on conversion by a state into a national bank the rights of dissenting stockholders shall be those specified in RSA 388:13."

By its wording this statute manifests a clear legislative intent not to place any restrictions in the path of a state bank intending to convert into a national bank. Furthermore, except for two requirements one pertaining to a two-thirds vote and the other to the rights of dissenting stockholders, "the action to be taken" and its "rights and liabilities and those of its stockholders" shall be governed "by the law of the United States and not by the law of this state." The main issue in this case is whether defendant is a state bank within the terms of the above statute.

The Trial Court found "that to be classified as a bank as that term is used in the commercial world, an institution must be empowered to accept deposits of one kind or another." The relators in their brief state that "the terminal inquiry in this case

is whether the defendant is a *bank* 'engaged in the business of receiving deposits.' "

Under Laws 1921, *c.* 274, the defendant was incorporated "under the name of Manchester Morris Plan Bank." It was empowered "to loan money at interest," to take security therefor "real and personal," "to issue interest-bearing certificates payable in installments or otherwise" and "to carry on business in accordance with the Morris Plan." It is also authorized to have a building and vaults for its business and to expend therefor a sum not exceeding a certain amount "except it is authorized so to do by the bank commissioners." The defendant is under the supervision of the Bank Commissioner and makes reports to him on the same forms as other banks. A Bank Commissioner of this state has expressed the opinion that its investments of surplus funds should be confined to those made legal for investments by savings banks. It is taxed as savings banks and trust companies are taxed and is an active member of the New Hampshire Bankers Association.

The money loaned by the defendant comes from surplus and borrowed funds and from funds obtained under its class B and C certificates. The class B certificates (full paid) can be redeemed at anytime on the request of the owner subject to the right to require a thirty day notice (which defendant has never required) and to limit payments to the amount of net receipts of the previous calendar month. The class C certificates (installment) contain the same conditions. Its treasurer in describing their procedure in receiving funds testified "I would have you sign one of our ledger cards and a signature card and we would stamp up a passbook with the amount you wanted to deposit." The defendant pays a rate of interest on its certificates which is competitive with banks in the Manchester area.

We hold that by the powers granted to it by the Legislature of our state, its method of operation, the manner in which it is treated and supervised by our State authorities that the Manchester Morris Plan Bank is a state bank within the terms of RSA 389:1. We further hold that there is nothing in the record to support the relators' contentions that the conversion of the defendant to a national banking association, to be known as the Indian Head National Bank of Manchester, will be in contravention of RSA ch. 384-B (supp) or any other state law, or violative of the Federal Bank Holding Company Act of 1956.

12 U.S.C., *ss.* 1841-1846. See *Staunton Industrial L. Corp.* v. *Commissioner of Int. Rev.,* 120 F. 2d 930, 933 (4th Cir. 1941); *Whitney National Bank* v. *Bank of New Orleans & Trust Co.,* 379 U. S. 411.

*Remanded.*

All concurred.